M. Michael Potoker, J.
A subpoena duces tecum has been issued to Mrs. Charlotte Evans and Charles Smith, employees of the St. Mary’s Methadone Maintenance Clinic, to appear before this court with all books and records pertaining to Bandy Still, the defendant in this case. The Corporation Counsel of the City of New York, appearing on behalf of the clinic, moves to quash said subpoena on the grounds of confidentiality and privilege pursuant to (1) the Comprehensive Drug Abuse Prevention and Control Act of 1970 (IT. S. Code, tit. 42, § 242a) and (2) the doctor-patient privilege as set forth in CPLB 4504.
The Corporation Counsel’s motion papers are accompanied by an affidavit of Bernard Bihari, M.D., Director of the New York City Methadone Maintenance Treatment Program (MMTP) and a memorandum of law on the issues involved.
In the second point raised by the Corporation Counsel in support of his motion he argues that the information sought by the People is protected by the physician-patient privilege (CPLB 4504, suibd. [a]).
He has however apparently overlooked section 3373 of the Public Health Law, which specifically states that records kept by programs such as St. Mary’s are exempt from the confidentiality of said privilege: “ For the purposes of duties arising out of this article, no communication made to a practitioner shall be deemed confidential within the meaning of the civil practice law and rules relating to confidential communications between such practitioner and patient.”
Furthermore, the Public Health Law (§ 3371, subd. 1, par. [b]) permits these records to be the subject of a subpoena: “ 1. No person, who has knowledge by virtue of his office of the identity of a particular patient or research subject, a manufacturing process, a trade secret or a formula shall disclose such knowledge, or any report or record thereof, except: *833 * * * (b) pursuant to a judicial subpoena or court order in a criminal investigation or proceeding.”
In addition, the New York Court of Appeals, in People v. Newman (32 N Y 2d 379) has held that the records sought herein are not protected by the physician-patient privilege. Although the Corporation Counsel has cited Newman in its memorandum in asserting that Newman holds that these records are protected by the privilege, this assertion is without merit: “ ‘ Consequently, the appellant may not rely on New York’s physician-patient privilege ’ ” (People v. Newman, supra, p. 384; emphasis supplied).
What remains for us to consider is what protection, if any, is to be afforded the methadone clinic from the court’s subpoena.
The basic thrust of the Corporation Counsel’s argument is that a patient’s record in the methadone center, even that part of it which does not refer to treatment, is confidential and cannot be revealed in any court or proceeding. They primarily rely on a group of Federal statutes and the decision of the New York Court of Appeals in People v. Newman (supra).
The pertinent sections of law are as follows:
Drug Abuse Prevention and Control Act of 1970 (U. S. Code, tit. 42, § 242a, subd. [a]):
‘ ‘ § 242a. Mental health, clinical training and instruction and clinical traineeships; stipends and allowances; research projects; protection of identity of subjects of drug research; grants to public and other nonprofit institutions.
“ (a) In carrying out the purposes of section 241 of this title with respect to mental health, the Surgeon General is authorized—
“ (1) to provide clinical training and instruction and to establish and maintain clinical traineeships (with such stipends and allowances (including travel and subsistence expenses and dependency allowances) for the trainees as the Secretary may deem necessary);
“ (2) to make grants to State or local agencies, laboratories, and other public or nonprofit agencies and institutions, and to individuals for investigations, experiments, demonstrations, studies, and research projects with respect to the development of improved methods of diagnosing mental illness, and of care, treatment, and rehabilitation of the mentally ill, including grants to State agencies responsible for administration of State institutions for care, or care and treatment, of mentally ill persons *834 for developing and establishing improved methods of operation and administration of such institutions.
“ The Secretary may authorise persons engaged in research on mental health, including research on the use and effect of alcohol and other psychoactive drugs, to protect the privacy of individuals who are the subject of such research by withholding from all persons not connected with the conduct of such research the names or 'other identifying characteristics of such individuals. Persons so authorised to protect the privacy of such individuals may not be compelled in any Federal, State, or local civil, criminal, administrative, legislative, or other proceedings to identify such individuals.” (Emphasis supplied.)
The act provides (U. S. Code, tit. 21, § 872, subd. [c] ):
“ Education and research programs of the Attorney General — Authorization. * * * Identification of research populations ; authorization to withhold.
“ (c) The Attorney General may authorise persons engaged in research to withhold the navies aiid other identifying characteristics of persons who are the subjects of such research. Persons who obtai/n this authorisation may not be compelled in any Federal, State, or local civil, criminal, administrative, legislative, or other proceeding to identify the subjects .of research for which such authorisation was obtained.” (Emphasis supplied.)
The Drug Abuse Office and Treatment Act of 1972 (II. S. Code, tit. 21, § 1175, subd. [a]) sets forth certain ground rules regarding confidentiality and the previously enacted 1970 act.
“ § 1175. Confidentiality of patient records — Disclosure authorization.
“ (a) Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function authorized or assisted under any provision of this Act or any Act amended by this Act shall be confidential and may be disclosed only for the purposes and u/nder the circumstances expressly authorised under subsection (b) of this section. (Emphasis supplied.)
“ Purposes and circumstances of disclosure affecting consenting or nonconsenting patient. * * *
a * * * (2) If the patient, with respect to whom any given record referred to in subsection (a) of this section is maintained, does not give his written consent, the content of such record may be disclosed as follows: * * *
*835 “ (C) If authorised by am appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the. treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of qll or any part of any record is necessary, shall impose appropriate safeguards against unauthorised disclosure. (Emphasis supplied.)
“Prohibition against use of record in making criminal charges or investigation of patient.
“(c) Except as ¡authorized by a court order granted under subsection (b) (2) (0) of this section, no record referred to'in subsection (a), of this section may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient.”
In the Newman case a specific “ Grant of Confidentiality ” was received by a letter dated November 8, 1972, under the authority vested in the Attorney General (U. S. Code, tit. 21, § 872, subd. [c]) and included this statement.
“ I héreby authorize you to withhold the names and other identifying characteristics of persons who are the subjects of research conducted pursuant to. and in conformity with this research project. You may not be compelled in any Federal, State, or local civil, criminal, administrative, legislative, or other proceeding to identify the subjects of such research. This grant of confidentiality shall apply tó all other persons engaged in carrying out the research project and shall cover all persons who are subjects of such research while the grant is in effect. * * # The grant shall remain in effect until completion of the research project or until the registration for this research project is either revoked or suspended or renewal of the registration is denied.”
This “grant” was made after the enactment of the 1972 act which included section 1175 (subd. [b], par. [2], cl. [C]) and is still in effect.
A regulation (37 Fed. Beg. 24639) was subsequently issued approximately one wéek after the letter to Dr. Newman, drafted by the Special Action Office for Drug "Abuse Prevention (SAO-DAP) which is quoted in People v. Newman (supra) emphasizing the overriding-importance of confidentiality to the success of the rehabilitation of the program’s addict participants.
The Court. of Appeals in Newman (supra) held in a 4 to 3 decision that section 1175 (subd. [b], par. [2], cl. [C] j of title 21 *836 of the United States Code applied to drug abuse prevention functions while the 1970 act (U. S. Code, tit. 21, § 872, subd. [c]) applied to drug research programs spch as Dr. Newman’s, the same program now headed by Dr. Bihari and including the St. Mary’s Center in question. The court herein stated as follows (p. 384-386):
“the issue posed upon this appeal is whether the 1972 Act repealed the 1970 Act insofar as the confidentiality of a patient’s record is concerned.
“ Subdivision (a) of section 3 of the 1970 act (U. ;S. Code, tit. 42, § 242a, subd. [a]) and subdivision (c) of section 502 (U. S. Code, tit. 21, § 872, subd. [c]) contain the controlling provisions. The first provided that .the Secretary of the Department of Health, Education and Welfare was empowered to authorize persons ‘ engaged in research on the use and effect of drugs ’ to ‘ protest the privacy of [the research subjects] ’ (i.e., the patients) by withholding .their ‘ names or other identifying characteristics ’ from anyone not connected with the research program. ‘ Persons so authorized ’, the statute continued, ‘ may not be compelled in any Federal, State, or local civil, criminal, administrative, legislative, or other proceedings ’ to identify the research subjects. The other provision — subdivision (c) of section 502 — granted the same authority to the Attorney General By March of 1972, however, neither the Secretary of HEW nor the Attorney General had exercised the authority thus given to him.
“ # # *' in that month, the 1972 Act * * * was enacted. Instead of sanctioning a grant of absolute confidentiality, similar to that provided by the 1970 Act for drug research programs, the 1972 Act authorized disclosure upon court order of the records of patients in a wide variety of drug programs and activities, entitled ‘ drug abuse prevention functions.’[3] More specifically, subdivision (a) of section 408 (U. S. Code, tit. 21, § 1175, subd. [a]) recited that ‘ Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function * * * shall be confidential, ’ subject, however, to disclosure upon authorization by ‘ a court *837 of competent jurisdiction ’ after ‘ application showing good cause therefor ’ (suhd. [h], par. [2], cl. [C]).
“ After the 1972 Act had been enacted, the Secretary of HEW and the Attorney General each exercised his power under the 1970 Act to authorize persons ‘ engaged in [drug] research ’ to withhold ‘ the names [and] other identifying characteristics ’ of the research subjects, that is, the patients. Thus, the Secretary of HEW published regulations which provide — with respect to the methadone maintenance treatment programs such as that conducted by the appellant — that ‘ information that would identify the patient will be kept confidential * * * and will not be divulged in any civil, criminal, administrative, legislative, or other proceedings conducted by Federal, State, or local authorities ’ (37 Federal Register 6943).4 ” (Footnote omitted except as otherwise noted.)
Referring to the amicus curiae brief filed in Newman by HEW and SAODAP the court continued (pp. 388-390): “ Indeed, after noting that the Methadone Maintenance Treatment Programs are 6 the most important drug addiction research programs presently in existence ’ and that their ‘ long range success * * * depends on the ability of each program director to promise to each participant, unconditionally, that his participation in the program will not be disclosed,’ the authors of the Government’s brief went on to point out that ‘ the United States Congress has enacted legislation over the last few years to encourage research into [the] causes and cures [of narcotics addiction]. In order to induce those suffering from drug addiction * * * to participate in these research programs, Congress enacted [in 1970] a statute granting absolute confidentiality to such participants, upon proper authorization. * * * [T]his federal statute is in full force and effect and is fully applicable to Methadone Maintenance Treatment Programs. ’
“ The construction thus given to the legislation by the very agencies charged with its administration, supervision and enforcement is entitled to considerable weight. * * * It is enough,to recall, as we wrote in the Howard case (28 N'T 2d, at p. 438), that ‘ [i]t is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld. ’
‘ ‘ Certainly, as noted above, it may not be said that the interpretation accorded the 1972 Act by the Special Action Office as part of a 1 comprehensive, coordinated long-term Federal strategy ’ against drug abuse was either 1 irrational ’ or ‘ unreasonable. ’ The confidentiality provision of the 1972 Act applies *838 to 1 drug abuse prevention functions ’ in general, while the absolute confidentiality provision of the 1970 Act applies to drug research programs, such as Dr. Newman’s, where the success of the program depends upon the ability of the director to guarantee each patient that his participation will not be disclosed to anyone not connected with the program.
‘ ‘ Our conclusion that the 1972 Act effected no repeal or modification of the 1970 provision is strengthened by the long-standing rule that, unless there is clear evidence of a legislative design to repeal or modify an earlier piece of legislation — and assuredly, no such explicit design is here present — we must, if at all possible, give full effect to both statutes. # * * Generally speaking, a statute is not deemed to repeal an earlier one without express words of repeal, unless the two are in such conflict that both cannot be given effect.”
In the dissenting opinion, Judge Breitbl, referring to section 1175 (subd. [b], par. [2], cl. [c]), stated (p. 391): “ The effect of the statute is to place in the court the sole power to disclose a patient’s record after balancing the several interests involved. That is what it says. There are no qualifications. It does not give any primary or secondary role in the disclosure to the program officials or to supervisory administrators.”
Considering the Neioman case as being dispositive of the present status of the law with regard to the confidentiality of methadone center records, the court is compelled to quash the subpoena.
Research of the statutory provisions relied upon by the court in the Newman case disclosed that they have not been modified or revised in any manner whatsoever. In a post -Newman article, “Confidentiality of Narcotic Addict Treatment Records: A Legal and Statistical Analysis ”, appearing in the Columbia Law Review[1], the authors opined (p. 1608): “ Except where disclosure will benefit the patient, confidentiality should be protected, even in the face of a court order, for all addiction treatment records. ’ ’
A similar view is held by John Olverson, Assistant General Counsel to the Special Action Office for Drug Abuse Prevention (SAODAP), who orally indicated to the court that pending regulatory changes, (a joint product of HEW and SAODAP) will allow disclosure, at the patient’s option, where such disclosure would provide benefit to the patient, specifically including criminal matters.
*839 Accordingly, the court grants the motion of the Corporation Counsel to the extent that the People are precluded from subpoenaing the defendant’s records at the clinic. It does not, however, preclude the defendant, if he so chooses, from subpoenaing his clinic records, nor does it prevent the People from subpoenaing, as witnesses, employees of the center to obtain general information limited to the operation of the methadone clinic and not to any individual patient.

.“Subdivision (b) of section 103 of the 1972 Act (TJ. S. Code, tit. 21, § 1103, subd. [b]) defined ‘ drug abuse prevention function ’ as ‘ any program or activity relating to drug abuse education, training, treatment, rehabilitation, or research, and includes any such function even when performed by an organization whose primary mission is * a' * unrelated to drugs.’ ”

. 73 Col. L. Rev. 1579, by Robert M. McNamara and Joyce R, Starr,